Raymond H. **JOHNSON**, Respondent,

v.

**MISSOURI–KANSAS–TEXAS RAILROAD COMPANY, A Corporation, Appellant.**

No. 48697.

Supreme Court of Missouri,

Division No. 1.

March 12, 1962.

Frank J. Rogers, Kansas City, Lynn M. Ewing, Jr., Nevada, Mo., for appellant.

Everett Teel, Nevada, Mo., Sylvan Bruner, Pittsburg, Kan., A. C. Popham, Kansas City, for respondent. Popham, Thompson, Popham, Trusty & Conway, Kansas City, of counsel.

WESTHUES, Judge.

Plaintiff, a railroad section laborer· for the defendant Railroad Company, was given a jury verdict in the sum of $30,000 against his employer for an injury alleged to have been sustained when he was carrying a railroad tie. From the judgment entered, the Railroad Company appealed. The case was brought under the Federal Employers' Liability Act. The injury was claimed to have been sustained on October 17, 1957. A previous trial resulted in a verdict and judgment for plaintiff in the sum of $45,000. On appeal, the judgment was reversed and the cause remanded for retrial. See Johnson v. Missouri-Kansas-Texas Railroad Co., Mo., 334 S.W.2d 41. That opinion contains a complete statement of the evidence and it was decided, contrary to defendant's contention, that the evidence was sufficient to make a case for a jury. Except for a few minor details, the evidence at the second trial was substantially the same as that presented at the first trial. On this appeal, we do not have before us the question of the sufficiency of the evidence to sustain a verdict for plaintiff.

In the brief on this appeal, defendant contends that the trial court erred in giving, at plaintiff's request, instructions 1 and 2;

further, that the trial court erred in overruling defendant's objection to inflammatory arguments and statements made by plaintiff's attorney.

For the disposition of the case on this appeal, the following statement of plaintiff's evidence will be sufficient. Plaintiff had been in the employ of the defendant since June, 1950. He was injured on October 17, 1957. On that day, the crew of which plaintiff was a member consisted of three men, Hamilton, the foreman, Smeithers, and the plaintiff. A fourth member, being on vacation, was absent. At the time plaintiff claims he was injured, he and Smeithers were loading two ties on a motorcar at the direction of the foreman Hamilton. The two ties to be loaded were lying on the ground along with about eight other ties. After one tie was loaded, plaintiff and Smeithers went back for the second. Plaintiff testified that this second tie was unusually large and weighed about 300 lbs. Plaintiff stated that he had hold of one end of the tie and walked backward toward the motorcar while Smeithers had hold of the other end and walked forward. The distance from the place where the ties were lying to the motorcar where they were to be loaded was about 30 feet. The railroad roadbed was slightly higher than the ground where the ties had been lying. Plaintiff testified that when he reached the track upon which the motorcar was standing and while he was in the act of stepping over the rail, Smeithers shifted his hold on the tie, throwing it up then letting it down, which caused plaintiff's body to be thrown into a twist. Plaintiff stated that he felt as though his back was broken, that he lost his balance and went down with his hands on the tie; that this all happened suddenly and without any warning from Smeithers that he was about to shift his hold on the tie; that the foreman helped him up and the foreman and Smeithers loaded the tie on the motorcar. The ties were taken to a point down the track where the foreman and Smeithers placed them under the tracks. Plaintiff stated that he did no more work that day.

Plaintiff testified that he consulted and was treated by a doctor beginning on October 22, 1957, and continuing to the day of the trial and that he has been unable to perform any manual labor since the time of the alleged injury.

Plaintiff testified that it was the usual practice when loading ties to use three men, two in the front and one trailing in the rear; further, that when one crewman was absent, the foreman would help; that on the occasion when he was injured, the foreman did not offer to help carry the ties. Plaintiff further testified that on such occasions, when two men would carry a tie and one would want to change his hold, it was a custom that first he would warn his helper that he would change his hold.

The defendant introduced evidence to sustain its contention that it was not the usual practice and custom to have three men carry a tie but that only two were used to perform that task. Further, defendant introduced evidence, contradicting that of plaintiff, denying that anything unusual occurred when plaintiff and Smeithers were loading the two ties in question; that plaintiff was not injured in the manner he claimed; and that plaintiff had complained of backache for a long time prior to October 17, 1957. Defendant introduced evidence that the ties loaded by plaintiff and Smeithers on October 17 were ties of the usual size and weight of mainline ties; that such ties weighed on an average less than 200 lbs.

The trial court gave, at plaintiff's request, instructions 1 and 2. By instruction 1, the case was submitted to the jury on the question of whether defendant negligently failed to "furnish reasonably sufficient help for" the task of carrying the ties in question. The instruction further submitted the question of whether the defendant in requiring only two men to carry ties had violated an alleged custom of having three men carry such ties. The instruction then

submitted the question of whether Smeithers, while the tie was being carried "undertook to change his hold on the tie and shifted it and violently pushed it against plaintiff" thereby causing plaintiff to be injured. Upon those issues, if found in plaintiff's favor, a verdict for plaintiff was authorized.

By instruction 2 the case was submitted to the jury on the question of whether the failure on the part of Smeithers to warn plaintiff that he intended to change his hold on the tie constituted negligence.

Defendant has briefed five points concerning alleged errors in instruction No. 1. The first is that "Instruction 1 is prejudicially erroneous in that it is unnecessarily long, complicated, argumentative and confusing." We are of the opinion that this contention must be sustained. The instruction contained over 800 words, all in a single sentence. The disputed issues as to defendant's liability were few. Many facts referred to in the instruction were not in dispute and were admitted by the defendant. The instruction submitted many evidentiary matters not material in reaching a verdict. It may be noted in reading the instruction, hereinafter quoted in full, that it referred at least five different times to the question of whether the foreman directed plaintiff and Smeithers to load the ties. That fact was admitted. The instruction in question reads:

"The Court instructs the jury if you believe and find from the evidence that on the occasion of his alleged injuries plaintiff and Smeithers as his co-worker were in the employ of defendant as sectionmen and at said time engaged in work incident to the maintenance of its mainline and the operation of its interstate trains and the carrying on of interstate commerce, and if you find that through its foreman over plaintiff, Hamilton, if so, defendant was then attempting to move from a pile of ties on its right-of-way, if so, said tie, referring herein to the tie which plaintiff was allegedly helping carry, when he was allegedly injured, and load it on a motor car then standing on its tracks some distance away, if so, for use in said main line, if so, and if you find that same was for use as a standard main line tie and that it and all ties in said pile were and were for use as main line ties, and if you find that main line ties generally were of a weight of about two hundred pounds and that the above mentioned tie weighed such amount or more, and if you find that there was then a long-standing general custom of defendant that in the carrying of a standard main line tie and such as said tie for the abovementioned distance and loading same a crew of three sectionmen were generally provided and used to carry and handle same and if the third man was away or unavailable for the foreman to act as the third hand and so help the other two, if so, and if you find that plaintiff at all times relied upon the abovesubmitted custom, if any, and if you find that defendant's said foreman over plaintiff, if so, ordered and required plaintiff and Smeithers to so carry and handle and load the abovementioned tie alone and to perform said task without other help or assistance, and if you find that in carrying out said above-mentioned task at said time and place plaintiff and his co-worker had to hold the ends of such tie against their bodies and go up an incline and over a rough terrain, if you find such existed, and to step over the rails in order to get the tie up to and on handles of the said motor car, if you so find, and if you find that defendant on said occasion did not provide nor furnish reasonably sufficient help for said task and that it was dangerous and not reasonably safe for such employees generally and plaintiff for plaintiff and Smeithers alone to carry and load said tie and to carry out the above-submitted order of Hamilton and to perform said abovesubmitted task if only two men were so provided and used by defendant, if so, and if you find that in doing, if so, such two persons carrying their respective loads at each end were likely to attempt to change their holds on said tie and shift same and that such employees generally and plaintiff were likely to be injured in the carrying

and loading same, if you so find, and if you find that when Hamilton ordered and directed plaintiff and Smeithers alone, if so, to carry and handle and load the tie above referred to, if so, Hamilton timely knew or by the use of ordinary care would have timely known of the aforesubmitted custom and all the aforesubmitted facts, if you find them to be the facts, and in time by the use of ordinary care to have provided and used additional and reasonably sufficient help, and that he failed so to do, if so, and if you find that by ordering and requiring plaintiff as above submitted to so perform said task with the help of one co-worker alone and by furnishing and using only two men to so lift and carry and load same, if so, Hamilton violated the abovesubmitted custom and that thereby and in the abovesubmitted respects defendant and Hamilton were negligent, if you so find, and if you find that at the time of his said alleged injuries plaintiff was obeying the abovesubmitted order and carrying and handling and holding against his body one end of the abovementioned tie and Smeithers was handling and carrying and holding against his body the other end thereof and that plaintiff was then attempting to step over a rail and was under strain from his load and was attempting to lift same up to and on said handles and was unstably balanced, if you so find, and if you find that Smeithers then and there undertook to change his hold on the tie and shifted it and violently pushed it against plaintiff, if you so find, and if you find that plaintiff's body was thereby suddenly and violently twisted and he was thereby injured, if you so find, and if you find that the above-submitted negligence of defendant and its foreman Hamilton directly contributed to cause plaintiff to be so injured, if you so find, then you will return a verdict for plaintiff Raymond Johnson and against the defendant company."

In the case of Prince v. Kansas City Southern Ry. Co., 358 Mo. 393, 214 S.W.2d 707, l. c. 710, this court considered the propriety of such an instruction and stated:

"The instruction consists of a single sentence, containing more than 700 words and submitting more than forty separate questions. Many of those questions are immaterial, but prejudicial, and the instruction as a whole is an argument for plaintiff rather than an explanation of legal issues. * * * The instruction is unnecessarily long, complicated, argumentative, misleading and confusing."

Instruction No. 1, here under consideration, is subject to the same criticism. We may comment here that the attorney who argued this case before this court was also counsel in the Prince case, supra. Instructions of this character have been condemned in a number of cases as may be noted from the case of Cade v. Atchison, T. & S. F. Ry. Co., 364 Mo. 620, 265 S.W.2d 366, l. c. 370(9), where this court en banc said, "We also must condemn instruction No. 2 for the reasons stated in Prince v. Kansas City Southern R. Co., 358 Mo. 393, 214 S.W.2d 707, 710, as 'unnecessarily long, complicated, argumentative, misleading and confusing'; and in Stid v. Missouri Pac. R. Co., 236 Mo. 382, 139 S.W. 172, 177, as 'leaving a jury to become confounded in a labyrinth of immaterial detail.' See also Roshel v. Litchfield & M. R. Co., Mo. App., 112 S.W.2d 876. Instruction No. 2 was more than twice as long as the one we criticised in the Prince case and is too long to set out in this opinion. It repeats many matters several times, * * *." Again we note what this court said many years ago in the case of Williams v. Ransom, 234 Mo. 55, 136 S.W. 349, l. c. 350(3): "The court refused five instructions asked by plaintiff. The one which outlined plaintiff's theory of the case covers about three large printed pages, and points out all matters of pleading and proof. It is a labyrinth of details of both proof and pleadings. No average jury could follow the train of thought contained in it. Even if it be granted that the theory of this instruction was correct, it should have been refused on account of its length alone, leaving out of consideration the comments contained

**36**

therein upon the pleadings and the evidence. Why it should require three large printed pages for the principal instruction upon the simple facts of this case is beyond comprehension."

The holdings in the above cases are supported by the general rule in other jurisdictions as stated in 88 C.J.S. Trial § 335, page 876, where it is stated thus: "It is necessary to any useful effect they may have on the minds of jurors that instructions should be as few, short, and pointed, as may consist with the object of giving clear ideas to the jury of the main points of law governing the case as applied to the facts. Therefore, it is generally held that the court should ordinarily avoid the giving of long and numerous instructions, because such instructions do not enlighten the minds of the jurors on the issues submitted, but tend rather to mislead and to introduce confusion, to invite error, and to lead to needless repetition."

There are cases wherein unusually long instructions were given and the judgments were affirmed. However, we find no case wherein such practice has been expressly approved. See Adams v. Atchison, T. & S. F. Ry. Co., Mo., 280 S.W.2d 84, l. c. 92, 93 (11), where it was noted that the instruction contained several paragraphs which were distinctly separated and numbered. In the case before us, there were no paragraphs or separations, but rather one long sentence containing over 800 words. It is very difficult to determine just what essential findings were required to authorize a verdict.

Other objections made concerning instruction No. 1 need not be considered. Our ruling renders it unnecessary to consider objections to instruction No. 2 and points briefed with reference to statements and arguments made by plaintiff's attorney during the trial.

For the reasons above given, the judgment of the trial court is reversed and the cause remanded for retrial.

All concur.